UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
STEPHEN FRIEDRICH, individually     )
and as Executor of the Estate of    )
PATRICIA FRIEDRICH and p.p.a S.F.;  )
and AMY FRIEDRICH,                  )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )   C.A. No. 14-353 S
                                    )
SOUTH COUNTY HOSPITAL HEALTHCARE    )
SYSTEM; JOSEPH P. TURNER, D.O.;     )
JOHN and/or JANE DOE, Alias; and    )
JOHN DOE CORPORATION, Alias,        )
                                    )
        Defendants.                 )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court is a Motion for Partial Summary Judgment ("Motion") (ECF No. 44) filed by Defendant South County Hospital Healthcare System ("Defendant"), in which it contends that the federal statute on which this action is premised - the Emergency Medical Treatemnt and Active Labor Act ("EMTALA") - does not apply to the hospital facility at issue in this case. Plaintiffs filed an Opposition. (ECF No. 49.) For the reasons that follow, Defendant's Motion is DENIED.

I.  Background

    Patricia Friedrich ("Friedrich") presented to the South County Hospital Medical & Wellness Center's Urgent/Walk-in Care

(the "Urgent/Walk-in Care") on September 9, 2013, complaining of severe pain and burning in her chest and right arm. She sent several text messages to her coworkers indicating that she "had to get checked out at the ER" and she "[s]aw south county walk in hospital from the highway and pulled in to get checked out! All the symptoms of a female type heart attacked but new it could't be . . . But since i'm not a doctor i thought it wax a good idea to get checked out." (Ex. 22 to Pls.' Opp'n 3-5, ECF No. 49-23 (text left unedited).) Friedrich was seen by Joseph Turner, D.O. After undergoing several tests, she was diagnosed with gastroesophageal reflux disease, given a "GI cocktail," and discharged with no follow-up ordered. (Pls.' Opp'n 1-2, ECF No. 49-1.)

The next day, Friedrich was found unresponsive at home. Emergency Medical Response was called and cardiopulmonary resuscitation began upon their arrival. She was transported to South County Hospital in asystole and death was pronounced. An autopsy confirmed the cause of death as atherosclerotic and hypertensive cardiovascular disease. (Pl.'s Opp'n 2, ECF No. 49-1.)

II. Discussion

The issue in the current motion is whether the Urgent/Walk-in Care was required to appropriately screen and stabilize Friedrich under EMTALA. Adopted by the United States Congress in 1986, EMTALA requires that federally funded hospitals provide an

"appropriate medical screening examination" to individuals who present to an emergency department requesting an examination, "to determine whether or not an emergency medical condition . . . exists." See 42 U.S.C. § 1395dd(a). Additionally, EMTALA mandates that when

> the hospital determines that the individual has an emergency medical condition, the hospital must provide either—
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

Id. § 1395dd(b). However, a patient who has not been stabilized may only be transferred if certain conditions are met. See id. § 1395dd(c). To establish a violation of the screening or stabilization provisions in EMTALA, a plaintiff must prove that:

> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improperly transferring her) without first stabilizing the emergency medical condition.

Alvarez-Torres v. Ryder Mem'l Hosp., Inc., 582 F.3d 47, 51 (1st Cir. 2009) (citing Correa v. Hosp. San Francisco, 69 F.3d 1184, 1190 (1st Cir. 1995)).

The threshold question in this case is whether the Urgent/Walk-in Care is a "dedicated emergency department" of South County Hospital under EMTALA.[1] The Centers for Medicaid and Medicare Services ("CMS") – a division of the Department of Health and Human Services that is responsible for the Medicare program and the development and enforcement of regulations on EMTALA – has defined "dedicated emergency department" as "any department or facility of the hospital, regardless of whether it is located on or off the main hospital campus" that meets at least one of three requirements:

> 1) It is licensed by the State in which it is located under applicable State law as an emergency room or emergency department;
>
> 2) It is held out to the public (by name, posted signs, advertising, or other means) as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment; or
>
> 3) During the calendar year immediately preceding the calendar year in which a determination under this section is being made, based on a representative sample of patient visits that occurred during that calendar year, it provides at least one-third of all of its outpatient visits for the treatment of emergency medical conditions on an urgent basis without requiring a previously scheduled appointment.

---

[1] In its Motion, Defendant argued that the Urgent/Walk-in Care is not a department of South County Hospital; however, at oral argument, Defendant conceded that point and focused on the issue of whether the Urgent/Walk-in Care qualifies as a dedicated emergency department.

42 C.F.R. § 489.24. There appears to be no dispute that the Court must defer to CMS's regulations in interpreting EMTALA, as both parties cite to 42 C.F.R. § 489.24 for the definition of a dedicated emergency department. (See Def.'s Mot. 9, ECF No. 44; Pls.' Opp'n 13, ECF No. 49-1.)

For the reasons that follow, the Court finds that the Urgent/Walk-in Care qualifies under the second requirement: it has held itself out "as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment." Id.[2]

In its Final Rule interpreting EMTALA, CMS responded to the comments submitted throughout the notice-and-comment rulemaking process. In doing so, it clarified:

> In the revised definition of dedicated emergency department that we are adopting in this final rule, we state that a department or facility that is held out to the public (by name, posted signs, advertising, or other means) as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment will be considered to be a dedicated emergency department. Consistent with what we have stated above, <u>we believe that most provider-based urgent care centers that are held out to the public as such will meet the revised definition of dedicated emergency department for purposes of EMTALA</u>.

---

[2] Accordingly, the Court need not reach the questions of whether the Urgent/Walk-in Care qualifies as a dedicated emergency department based on its licensure or number of emergency outpatient visits.

5

Medicare Program; Clarifying Policies Related to the Responsibilities of Medicare-Participating Hospitals in Treating Individuals With Emergency Medical Conditions, 68 FR 53222-01, 53231 (emphasis added). CMS made clear that it saw no distinction between "urgent" and "emergency" care:

> We believe it would be very difficult for any individual in need of emergency care to distinguish between a hospital department that provides care for an "urgent need" and one that provides care for an "emergency medical condition" need. Indeed, to CMS, both terms seem to demonstrate a similar, if not exact, functionality. Therefore, we are not adopting the commenters' suggestion to except urgent care centers from dedicated emergency department status. As we have discussed above, if the department or facility is held out to the public as a place that provides care for emergency medical conditions, it would meet the definition of dedicated emergency department. An urgent care center of this kind would fall under this criterion for dedicated emergency department status.

(Id. at 53231.) CMS also stated that "[t]he definition [of dedicated emergency department] would also be interpreted to encompass those off-campus hospital departments that would be perceived by an individual as appropriate places to go for emergency care." (Id. at 53248 (emphasis added).)

As noted above, there is no dispute that the Court must give deference to CMS's regulations under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). See id. at 842-43 (courts must defer to agency regulations where statute is ambiguous and agency interpretation is reasonable). Whether the Court must defer – and if so, what level of deference is required

6

– with respect to the commentary in the Final Rule is a closer question. Some courts have held that, because agency responses to comments are interpreting the agency's own regulations, deference under Auer v. Robbins, 519 U.S. 452 (1997) applies and "the agency's interpretation is 'controlling unless plainly erroneous or inconsistent with the regulation.'" Rupert v. PPG Indus., Inc., No. 07CV0705, 2009 WL 596014, at *41 n.5 (W.D. Pa. Feb. 26, 2009) (internal quotation marks omitted) (quoting Auer, 519 U.S. at 461); see also Doyle v. City of New York, 91 F. Supp. 3d 480, 484–85 (S.D.N.Y. 2015) (finding that Department of Labor response to comments was "neither 'plainly erroneous' nor 'inconsistent with the regulation,' and thus entitled to deference under Auer"). Even where courts have not gone so far as to award Auer deference, they have noted that some consideration of the agency's interpretation is appropriate. See United States ex rel. Phalp v. Lincare Holdings, Inc., 116 F. Supp. 3d 1326, 1349–50 (S.D. Fla. 2015) ("[P]ublished guidance and responses to specific comments — which are a byproduct of the rulemaking process — . . . should be accorded due weight."); United States v. Shaw, 106 F. Supp. 2d 103, 113 (D. Mass. 2000) (noting that a "court is wise to consider" the agency's interpretation of the regulatory scheme discussed in the final rule).

In this case, regardless of whether the Court were to award full Auer deference or merely give some weight to the CMS

commentary, the result is the same. Defendant deliberately used the word "Urgent" in naming the Urgent/Walk-in Care; it could have simply called it a "Walk-in" clinic. Indeed, the evidence shows that, based on the name of the clinic, Mrs. Friedrich herself thought she was going to a hospital emergency room: she texted several coworkers that she had gone to "the ER." (Ex. 22 to Pls.' Opp'n, ECF No. 49-23.) Furthermore, Plaintiffs cite deposition testimony from several staff members indicating that they were aware that patients with emergency needs sometimes reported to the Urgent/Walk-in Care, and had to be prepared for that. (See Pls.' Opp'n 15-18, ECF No. 49-1.)

Defendant argues that the Urgent/Walk-in Care's website makes clear that it does not offer emergency care. The website states:

> The Urgent/Walk-in Care clinic is for those occasions when you want to see a doctor right away, yet <u>don't need emergency room level care</u>. The staff at the clinic can treat urgent needs such as: deep lacerations, sinus infections, sprains, sports injuries, minor accidents, Strep throat, and other conditions requiring immediate attention. Even if you have a primary care physician, you may find the need for the Urgent/Walk-in Care services, which is open Monday through Friday 8 a.m.- 6 p.m.; Saturday 8 a.m.- 4 p.m.; and Sunday 10 a.m.- 4 p.m.

(Def.'s Mot. 12, ECF No. 44 (emphasis in original).) The website further represents that the Urgent/Walk-in Care "can treat virtually any <u>non-emergency</u> need." (Id. (emphasis in original).) As an initial matter, as Plaintiffs point out, Defendant only cites the Urgent/Walk-in Care's current website; it does not present any

8

evidence concerning how the Urgent/Walk-in Care represented itself at the time Mrs. Friedrich was seen. (Pls.' Opp'n 20-21, ECF No. 49-1.) This is simply insufficient for summary judgment. It could well be the case that this language was added after this lawsuit. But in any event, the fact that Defendant's website states that the Urgent/Walk-in Care offers "urgent" but "non-emergency" care cannot disclaim the responsibility that comes from presenting itself as an urgent care center. Someone driving by the clinic with an emergency medical need – like Friedrich – would not be able to make this distinction based on the signage, and certainly cannot be expected to check the website before walking in with chest pain. There is no evidence that Defendant made patients aware that the Urgent/Walk-in Care was not an appropriate place to go for emergency care anywhere other than the website.

Defendant also relies heavily on the First Circuit's decision in Rodriguez v. American Int'l. Ins. Co. of Puerto Rico, 402 F.3d 45, 49 (1st Cir. 2005) for the contention that an urgent care facility is not a hospital emergency department. However, as Plaintiffs point out, the facility in Rodriguez — a "centro de diagnostico y tratamieto" or "CDT" in Puerto Rico — was an independent facility, not associated with any hospital. See id. at 47 ("It is undisputed that the Corazal CDT is an independent facility and is not attached to a hospital."). Thus, the First Circuit found that EMTALA did not apply to the CDT because "EMTALA

9

requires the emergency room be of a participating <u>hospital</u>." <u>Id.</u> at 49 (emphasis in original). Here, Defendants have conceded that the Urgent/Walk-in Care is a department of South County Hospital.

III. Conclusion

For the foregoing reasons, Defendant's Motion is hereby DENIED.

IT IS SO ORDERED.

*[signature: WESmith]*

_____
William E. Smith
Chief Judge
 Date:  November 1, 2016